IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

VITINA GANTER                                                                                        PLAINTIFF

v.                                            Case No. 1:14-cv-1064

SUN LIFE ASSURANCE COMPANY OF
CANADA and CHS/COMMUNITY
HEALTH SYSTEMS, INC., LONG TERM
DISABILITY INSURANCE PLAN                                                              DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Vitina Ganter filed this Complaint against Defendants Sun Life Assurance Company of Canada ("Sun Life") and CHS/Community Health Systems, Inc., Long Term Disability Insurance Plan ("CHS") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that her long term disability benefits were wrongly denied. Before the Court is Plaintiff's Motion for Judgment on the Record. (ECF No. 24). Defendants have filed objections and their own Motion for Judgment on the Record. (ECF No. 27). Plaintiff has filed a response to Defendants' Motion. (ECF No. 29). The Court finds this matter ripe for consideration.

BACKGROUND

From November 5, 2010 until August 23, 2012, Plaintiff was employed as a Licensed Practical Nurse by South Arkansas Home Health in El Dorado, Arkansas. South Arkansas Home Health is owned and operated by CHS. Her job duties involved providing prescribed medical treatment and personal care services to ill, injured, convalescent, and handicapped persons. Plaintiff was eligible for disability insurance coverage under an insurance policy offered by CHS and Sun Life. On October 11, 2011, Plaintiff elected to participate in the insurance coverage. On August 23, 2012, Plaintiff ceased working, stating that she could no longer work due to a

fractured back, daily headaches, and pain, numbness, and tingling shooting down her neck and back to her legs, feet, and fingertips, caused by a fall on a wheel chair ramp at a patient's home in February 2012 and aggravated in July 2012. Plaintiff stated that she was unable to perform the important duties of her job on a regular basis, and she filed for Long Term Disability ("LTD") benefits under the insurance policy, claiming that she was totally disabled. Sun Life determined that Plaintiff was not eligible for LTD benefits and declined to make any payments. This denial of benefits is currently before the Court for review.

    *I.*    *The Disability Plan*

Sun Life is the insurer of the Policy and also serves as its claims administrator. As the claims administrator, Sun Life has the discretion to determine eligibility under the Policy and entitlement to benefits in accordance with the terms of the Policy. Policy participants are eligible for LTD benefits if they are found to be totally or partially disabled. The Policy defines "Total Disability or Totally Disabled" as follows:

> [D]uring the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training, or experience.
>
> The loss of a professional license or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Total Disability.
>
> To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability, Partial Disability or a combination of days of Total and Partial Disability.

(ECF No. 14, Exh. 8, Pg. 98); SUN00802.

    The policy further defines "Own Occupation" as:

>the usual and customary employment, business, trade, profession or vocation that the Employee performed as it is generally recognized in the national economy immediately prior to the first date Total or Partial Disability began. Own Occupation is not limited to the job or position the Employee performed for the Employer or performed at any specific location.

(ECF No. 14, Exh. 8, Pg. 97); SUN00801.

Sun Life, after reviewing the record, determined that the objective medical evidence did not support Plaintiff's claimed disability under the terms of the Policy and did not award Plaintiff any benefits.

## II. Plaintiff's Medical History

On August 21, 2012, Plaintiff complained to Christie Skinner, APN, of pain all over her body, which she believed was related to her nerves. She was treated with prednisone. On August 24, 2012, she went to the Smackover Family Practice Clinic and was seen as a new patient by Dr. R. Keith Davis, M.D. She saw Dr. Davis due to left side facial numbness and pain down the left side of her neck and body. She indicated that the prednisone was not helping. Dr. Davis prescribed several medications to assist with her treatment. On August 27, 2012, Plaintiff followed up with Ms. Skinner, still indicating pain on her left side. Ms. Skinner recommended that Plaintiff see a chiropractor. On August 28, 2012, Plaintiff was admitted to the Medical Center of South Arkansas for pain and a persistent headache. On that day, Plaintiff underwent MRIs of both her brain and cervical spine. The MRI of her brain showed cerebellar tonsillar ectopia and three small punctate foci of flair hypersensitivity in the right frontal subcortical white matter. The MRI of the cervical spine showed shallow mid-cervical disk displacements. Plaintiff was treated for her pain.

Plaintiff's records were then sent to Dr. Scott M. Schlesinger, M.D., a neurosurgeon in Little Rock, Arkansas. On September 14, 2012, after reviewing her records, Dr. Schlesinger

concluded that there was nothing that he could do from a neurosurgical standpoint. He could see no clinically significant abnormalities from Plaintiff's records.

Dr. Davis at Smackover Family Practice Clinic continued to treat Plaintiff for her pain. On September 26, 2012, Plaintiff was seen by Dr. Davis, again for headaches and neuropathy. Plaintiff then scheduled an appointment with a neurologist. On October 2, 2012, she saw Dr. Davis again for a refill of her pain medication. On that date she also complained of numbness.

On October 5, 2012, Plaintiff saw Dr. Christopher Wright, M.D., a neurologist at the Little Rock Diagnostic Clinic in Little Rock, Arkansas. Dr. Wright reviewed Plaintiff's records and found a normal MRI of the brain and mild disk bulging in the cervical spine. From his observation and examination of Plaintiff, Dr. Wright believed that Plaintiff presented what was most likely a fibromyalgia-like illness. Dr. Wright found no structural neurological issues and stated he would check other tests to rule out other causes and conduct further testing. At that time, he prescribed medication for Plaintiff in addition to the medication prescribed by Dr. Davis.

On November 2, 2012, Plaintiff followed up with Dr. Davis about the visit with Dr. Wright. On November 9, 2012, Dr. Davis ordered a physical therapy evaluation for Plaintiff. On November 16, 2012, she followed up again with Dr. Davis and stated that she fell on the previous Wednesday and injured her right shoulder. She also complained of memory problems. On that day, Dr. Davis filled out a work release stating that Plaintiff was unable to work until December 17, 2012 due to her pain level and medication that may cause her drowsiness.

On December 6, 2012, Plaintiff underwent an MRI of both her lumbar and thoracic spine. From the MRI on Plaintiff's lumbar spine, the radiologist saw a L4-5 broad based disk protrusion without high grade lateral canal stenosis and a L5-S1 bi-foraminal narrowing, greater on the left.

The radiologist saw no high grade disk protrusion or critical canal stenosis involving the thoracic disk levels when analyzing the thoracic spine MRI. On December 18, 2012, Plaintiff followed up with Dr. Davis to discuss the results of the MRIs. She stated she was still in constant daily pain. On that same day, Dr. Davis filled out FMLA paperwork stating that Plaintiff could not work for six months, or until June 16, 2013. He stated that she could not drive, climb, stoop/bend at the waist, or lift anything over ten pounds.

On January 31, 2013, Plaintiff saw Dr. Reza Shahim, a neurosurgeon at Neurological Surgery Associates in Little Rock, Arkansas, for her chronic head and back pain. Dr. Shahim found that Plaintiff was symptomatic from facet arthropathy and disk disease, particularly in the lumbar spine, and, to a certain degree, in the cervical spine. Dr. Shahim recommended conservative management including lumbar epidural and facet injections and cervical injections. He referred Plaintiff to neurology for evaluation of her headaches and prescribed her medication.

On February 7, 2013, Plaintiff saw Dr. Davis to discuss a neurologist appointment. At that time, Plaintiff complained of a cough, wheezing, chest congestion, and yellow mucus.

On February 13, 2013, Dr. Shahim performed an cervical facet injection on Plaintiff's back. On April 9, 2013, Plaintiff followed up with Dr. Davis. She stated that she had no energy, was depressed, could not sleep, and continued to suffer from severe headaches. She also stated that her neck pain had gotten worse after the injection. Dr. Davis completed an attending physician statement on April 19, 2013. In this statement, he wrote that Plaintiff was being supervised for medication management and for pain management for her headaches, pain, memory disturbance, fatigue, and depression. He outlined physical restrictions and limitations that were to apply for twelve weeks.

On April 25, 2013, Plaintiff saw Dr. Lon Burba, M.D., a neurologist at the Arkansas Neurodiagnostic Center in Little Rock, Arkansas. Dr. Burba found that Plaintiff suffered from post-traumatic greater occipital neuralgia. He prescribed medication and took her off of the narcotic pain killer that she had been taking. Dr. Burba also recommended physical therapy.

On August 9, 2013, Plaintiff underwent another MRI of her lumbar spine at Chenal MRI in Little Rock, Arkansas. Dr. David Harshfield, M.D. interpreted the findings of this MRI and found evidence of facet hypertrophy accompanied by developing collisional lesions of the pars interarticularis along the lower lumbar levels, with associated discopathy and canal stenosis. He also found a L4-5 left paracentral disk protrusion.

On March 3, 2014, Dr. Burba wrote a letter to Plaintiff's counsel describing her current condition. Dr. Burba stated that he does not believe that Plaintiff is able to perform the occupation of a licensed practical nurse on her current medications. He stated that, because she takes the drug Valium, Plaintiff should not drive long distances on the interstate, should not administer medications to patients, and should not bathe or lift patients. Dr. Burba further stated that Plaintiff had mild chronic denervation in process in her left C5 root that may represent a mild C5 radiculopathy. Because of her pain and condition, Dr. Burba stated that Plaintiff could not safely lift, carry, push, or pull 20-50 pounds. According to Dr. Burba, Plaintiff's headaches, tingling, and numbness further prevented her from safely performing some of the physical requirements of her job. He recommended that Plaintiff continue to be treated for her pain and headaches.

  III. *Claim History*

On April 19, 2013, Sun Life received Plaintiff's first claim documents and began to process her claim. On September 10, 2013, Plaintiff's file and medical records were reviewed by

a consulting physician, Dr. Calvin P. Fuhrmann, M.D., who is a board certified Internal and Pulmonary Medicine physician. It was Dr. Fuhrmann's opinion that Plaintiff's complaints were entirely inconsistent with a serious injury, and that the medical images did not show abnormality that would prevent her from carrying out her usual activities. Dr. Fuhrmann felt that Plaintiff was capable of carrying out sedentary activities. From the records, Dr. Fuhrmann also found that Plaintiff's condition has improved to the point where she is capable of carrying out her usual activities. He found that there was no medical evidence that would support Plaintiff's contention that she is unable to function in her usual capacity.[1]

On September 19, 2013, Sun Life made the decision to deny Plaintiff's claim and informed her of the decision. The LTD benefits analyst in charge of Plaintiff's claim noted that the medical evidence available did not support Total and/or Partial Disability throughout and beyond the policy elimination period.

On March 17, 2014, Plaintiff appealed to Sun Life regarding the denial of her claim for LTD benefits under the Policy. Plaintiff submitted the March 3, 2014 letter from Dr. Burba to Sun Life and asked that Sun Life take into consideration various medical journal articles that stated there is no direct correlation between the level of abnormality on an MRI image and the level of pain and disability experienced by the patient. These journals suggested that, in addition to the MRI images, a physical examination of the patient is necessary for a medical diagnosis.

Sun Life forwarded Plaintiff's medical records to the National Medical Review Company for review. On May 5, 2014, Plaintiff's records were reviewed by Dr. Steven D. Graham, M.D., a board certified neurologist. In his report, Dr. Graham noted that no neurological exam abnormalities were documented. He noted the disk protrusions and abnormalities that affected

---

[1] On September 17, 2013, Dr. Fuhrmann corrected his earlier opinion, stating that he did not review any surveillance documents. In his earlier opinion, he stated that he had reviewed surveillance documents.

Plaintiff. He further noted minor changes in all four extremities, but concluded that the neurological exams were normal. Dr. Graham also stated that there was no objective examination evidence that would translate into specific physical restrictions or limitations. Based upon his review, Dr. Graham concluded that Plaintiff did not have any objective physical condition supported by clinical evidence that would translate into functional impairment from the period of August 24, 2012 through the date that Dr. Graham completed his review.

Dr. Graham found that Plaintiff required no restrictions or limitations. Dr. Graham further found that Plaintiff's treatment plan fell within the standard of care. He also found that the medical evidence did not support the use of narcotics to manage Plaintiff's condition.

Plaintiff's medical records were also reviewed by Dr. Staci Ross, Ph.D., a board certified neuropsychologist. In her report, Dr. Ross noted that Plaintiff reported feeling depressed at times and that she was initiated on psychotropic medications. However, according to the records reviewed by Dr. Ross, Plaintiff's mental status examination was generally within normal limits. Dr. Ross further noted that there was no information available regarding self-report or objective observations from a psychological standpoint to determine the extent and severity of psychological symptoms and work-related restrictions. Based upon her review, Dr. Ross found that there were no psychological conditions supported by clinical evidence that functionally impaired Plaintiff for the period of August 24, 2012 to the time when Dr. Ross completed her review.

On June 12, 2014, Sun Life informed Plaintiff's attorney that Sun Life was willing to keep Plaintiff's appeal open pending an update on Plaintiff's Social Security claim. On June 24, 2014, Plaintiff informed Sun Life that, on June 5, 2014, she had attended a hearing in front of the Social Security Administration, but there had been no decision. On August 15, 2014, Sun Life

upheld its denial of LTD benefits. Sun Life's decision stated that the medical evidence in the claim file had been reviewed by multiple physicians who found that Plaintiff was not experiencing diminished functional abilities that would prevent her from performing her occupation of a Licensed Practical Nurse.

On October 29, 2014, Plaintiff filed the present lawsuit in state court. On December 5, 2014, the case was removed to this Court. This matter is now before the Court on Plaintiff and Defendants' Motions for Judgment on the Record.

## STANDARD OF REVIEW

Generally, when a disability plan governed by ERISA gives the plan administrator discretionary authority to determine the eligibility for benefits, the Court reviews the administrator's decision for an abuse of discretion.[2] *Firestone Tire & Rubber Co. v. Branch*, 489 U.S. 101, 115 (1989). Under the abuse of discretion standard, the court must affirm the plan administrator's interpretation of the plan unless it is arbitrary and capricious. *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 896-97 (8th Cir. 2009). The Eighth Circuit has stated that "[w]hen a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007). Substantial evidence is defined as "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). The Eighth Circuit has also stated that "[t]he discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made." *Ratliff*, 489 F.3d at 348. The Court may consider the quantity and quality of evidence before a plan administrator, and the Court should be hesitant to interfere with the

---

[2] The Court previously held that the insurance policy in question gave the plan administrator discretionary authority to determine eligibility, thus, the abuse of discretion standard of review would be applied in this case. (ECF No. 30).

administration of an ERISA plan. *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 875 (8th Cir. 2006).

## DISCUSSION

The issue before the Court is whether Sun Life abused its discretion when it denied Plaintiff's appeal based on its determination that Plaintiff was not disabled as defined by the plan.

### I. Abuse of Discretion

Plaintiff argues that Sun Life abused its discretion in denying her claim for LTD benefits. Specifically, Plaintiff asserts that Sun Life acted arbitrarily in failing to analyze whether Plaintiff could perform the material and substantial duties of her own occupation. Plaintiff argues that Sun Life failed to take into consideration whether she was able to perform the job tasks of an LPN, whether she was able to perform the physical requirements of her job as an LPN, and whether she was able to drive. In their response, Defendants state that, in making the decision, Sun Life thoroughly analyzed the question of whether Plaintiff could perform the material and substantial duties of her regular occupation. Defendants further argue that Plaintiff had the burden to prove her functionality and has failed to meet her burden.

In the Eighth Circuit, a plan administrator is entitled to obtain a professional peer reviewer opinion, but it is "not free to accept this report without considering whether its conclusions follow logically from the underlying medical evidence." *Willcox v. Liberty Life Assur. Co. of Boston*, 552 F.3d 693, 700-701 (8th Cir. 2009) (citing *Abram v. Cargill, Inc.*, 395 F.3d 882, 887 (8th Cir. 2005)). Additionally, when a treating physician's opinion is different from these medical reviewers, treating physicians are not automatically entitled to special weight in disability determinations under ERISA. *Midgett*, 561 F.3d at 897 (citing *Black & Decker*

*Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). However, plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinion of a treating physician. *Id.* Further, where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee is not disabled. *Rutledge v. Liberty Life Assur. Co. of Boston*, 481 F.3d 665, 660 (8th Cir. 2007).

In this case, the administrative record reveals that Sun Life based its decision to deny benefits on the opinions of Dr. Ross, Dr. Graham, and Dr. Fuhrmann, along with the medical examination notes from Plaintiff's treating physicians. All of the medical reviewers concluded that Plaintiff did not have any functional impairment and should be able to return to her job as an LPN. A review of the record supports these positions. While the treating physicians' opinions were that Plaintiff should remain off work, the objective evidence does not reflect that Plaintiff has any functional impairment. It only reflects Plaintiff's subjective complaints of pain. It is unclear from the record how this pain affected Plaintiff's ability to work. Plaintiff and her treating physicians have not offered a test or explanation showing that Plaintiff is functionally impaired from performing her job.

Plaintiff also asserts that Sun Life ignored and failed to consider medical literature that supports her claim. In her appeal letter, Plaintiff included ten medical journal articles showing that there is no direct correlation between the level of abnormality on an MRI image and the level of pain and disability experienced by the patient. The articles further state that a physical examination of the patient, in addition to consideration of MRI images, is necessary for medical diagnosis. However, the Eighth Circuit has held that no physical examination of a claimant is required. *See Midgett*, 561 F.3d at 897. Plan administrators have discretion to deny benefits based upon their acceptance of the opinions of reviewing physicians over the conflicting

11

opinions of the claimant's treating physicians unless the record does not support the denial. *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006); *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002). It appears that Sun Life conducted a thorough review of Plaintiff's claim, including submitting Plaintiff's file to three independent medical reviewers.

Upon the examination of the administrative record and the consideration of Plaintiff's and Defendants' arguments, the Court finds that Sun Life's conclusion that Plaintiff did not suffer from a disability as defined by the plan is reasonable and supported by substantial evidence.

## II. *Conflict of Interest*

The administrative record in this case reflects that a conflict of interest exists because Sun Life was both the administrator of the Policy and the insurer or payer of plan benefits. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The Court recognizes this conflict and must take it into consideration when conducting a thorough analysis. Thus, the Court must consider this conflict as one factor among many in determining whether the plan administrator abused its discretion by denying benefits. *Id.* The significance of the conflict of interest depends on the circumstances of the particular case. *Id.* In the "combination of factors method," the conflict of interest serves as a "tie breaker when the other factors are closely balanced." *Id.* The conflict of interest factor is "more important … where circumstances suggest a higher likelihood that it affected the benefits decision" and "less important … where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.*

Plaintiff generally alleges that Sun Life's decision was biased. While it is clear that a conflict of interest exists, the presence of such a conflict does not mandate a finding that the benefits determination was prejudiced by the conflict of interest. Here, there are many other

factors that support a finding that this conflict did not cause Sun Life to abuse its discretion. These factors include: 1) Sun Life's review of additional information from Plaintiff regarding her appeal; 2) Sun Life's hiring of three independent medical reviewers to review all of Plaintiff's medical records; and 3) Sun Life's explanation of findings, including information it relied upon in its denial letter and subsequent letter upholding the denial. After considering all of the factors, the Court finds that Sun Life has offered the Court "a reasonable explanation for its decision, supported by substantial evidence," and therefore the Court will not disturb Sun Life's denial. *See Ratliff*, 489 F.3d at 348.

## CONCLUSION

For the reasons stated above, the Court finds that Sun Life did not abuse its discretion in denying Plaintiff's claim for LTD benefits. Accordingly, Plaintiff's Motion for Judgment on the Record (ECF No. 24) should be and hereby is **DENIED**. Defendants' Motion for Judgment on the Record (ECF No. 27) should be and hereby is **GRANTED**. Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE**. An order of even date, consistent with this opinion, shall issue.

IT IS SO ORDERED, this 31st day of March, 2016.

/s/ Susan O. Hickey  
Susan O. Hickey  
United States District Judge